**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

LAURIE BROWN,

    Plaintiff,

vs.                                       CASE NO. CV-05-J-2451-S

HARTFORD LIFE GROUP
INSURANCE COMPANY;
CONTINENTAL CASUALTY
COMPANY,

    Defendants.

**MEMORANDUM OPINION**

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully terminated her long term disability benefits, in violation of 29 U.S.C. § 1001, *et seq*. The defendant filed motion for summary judgment and a memorandum and evidence in support of its motion, including the administrative record (docs. 24-26). No opposition was received by the plaintiff.[1] Upon consideration of the pleadings, memorandum of the defendant and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain in this case.

---

[1] Pursuant to Exhibit A to the court's Scheduling Order entered March 9, 2006, the plaintiff had until August 11, 2006, to respond to the defendant's motion for summary judgment. To date, no response has been received.

**FACTUAL BACKGROUND**

The plaintiff was employed by Cerner Corporation as a Project Executive. Exhibit 1 at 0025. Through her employment, the plaintiff had a long-term disability (LTD) policy. Defendant Continental Casualty Company ("CCC") insures the policy and defendant Hartford Life Group Insurance Company ("Hartford") serves as the claims administrator of the Plan and 100% reinsurer of CCC. Plaintiff asserts in her complaint that defendant initially paid her LTD benefits, but thereafter wrongfully denied her claim for the time period after December 29, 2003. Defendants assert that under the definition of "regular occupation" as that term is used in the policy, the plaintiff was not disabled.[2] The LTD policy has a maximum payable period for disability from "own occupation" for 36 months. Exhibit 1 at 0025.

Medical records contained in the administrative record reflect that the plaintiff began to have problems with her right eye in March 2003. Exhibit 1 at 0414. Surgery was performed to repair her eye. Exhibit 1 at 0401, 0412. Additionally, she was diagnosed with cataracts and hypertensive retinopathy in both eyes. Exhibit 1 at 0412. The plaintiff was off work with short-term disability ("STD") benefits from

---

[2] The entire claims file was submitted by defendants as Exhibit 1 to the affidavit of Jeffrey Small.

March 3, 2003, through March 24, 2003, and then again from April 18, 2003, through July 16, 2003. Exhibit 1 at 0073, 0168.

Following the surgery she developed complications including loss of vision and headaches. Exhibit 1 at 404, 405. The medical records reflect a diagnosis of a central retinal vein occlusion with cystoid macular edema in her right eye and hypertensive retinopathy in both eyes. Exhibit 1 at 0401. She was given intravitreal Kenalog injections to her right eye on June 2, 2003, November 18, 2003, and January 27, 2004. Exhibit 1 at 0314, 0315, 0401. In July 2003 the plaintiff was noted to still be unable to read with her right eye. Exhibit 1 at 0397.

Plaintiff's employer sent a form to plaintiff's physician in July 2003 requesting information on her prognosis and return to work date. Exhibit 1 at 395-396. Dr. Richard Feist stated that "patient should have returned to work – should have only been off short period of time to recover from surgery (was off 3/3/03 – 3/23/03)" and that she was limited to lifting no more than 20 pounds until after April 11, 2003. Exhibit 1 at 396.

Due to a cataract in her right eye, the plaintiff was referred back to her ophthalmologist, Dr. Susan Eiland, in October 2003 for cataract surgery. Exhibit 1 at 0276, 0320, 0345. Because of ongoing pain and vision trouble, the plaintiff underwent further surgery to her right eye in February 2004. Exhibit 1 at 0239, 0289-

0290, 0292, 0313.  Following that surgery, the plaintiff continued to complain of blurred vision, floaters, and headaches.  Exhibit 1 at 0280, 0287.  In May 2004 Dr. Feist stated that due to plaintiff's ongoing vision problems, "it would have been very difficult for her to function in the workplace during these past 14 months.... Please let me know if you require any further information in support of Ms. Brown's case." Exhibit 1 at 0269.  However, Dr. Feist also reported to the independent reviewer hired by defendants, Dr. Fred Read, that he wrote that letter because of the emotional turmoil the plaintiff had been through, although there was no objective physical reason the plaintiff could not work.  *See e.g.*, Exhibit 1 at 0152.

While off of work due to her vision problems, the plaintiff also fractured fingers in her right hand.  Exhibit 1 at 393-394.  She underwent surgery to repair the fractures on April 21, 2003.  Exhibit 1 at 0393.  She experienced complications and underwent a second surgery on July 15, 2003.  Exhibit 1 at 0392.  Based on this injury, Dr. Victoria R. Masear opined that the plaintiff was totally unable to work from April 14, 2003, until May 16, 2003, and partially unable to work through July 23, 2003.  Exhibit 1 at 0391.  Dr. Masear reported that the plaintiff's prognosis was good and she should be able to return to "[f]ull duties & use of right hand by mid Sept. 2003." Exhibit 1 at 0390.  In August Dr. Masear noted that the plaintiff had excellent motion in her fingers and was to wear a splint only when driving or

sleeping. Exhibit 1 at 0361. Upon further inquiry in November 2003, Dr. Masear again reiterated that the plaintiff could do anything she could tolerate. Exhibit 1 at 0342. Records from December 2003 state that the plaintiff could return to normal activities, had full range of motion in her fingers, and did not need to return to Dr. Masear unless she had further problems. Exhibit 1 at 0286.

The evidence shows that defendant Harford is the claims administrator and has sole authority to construe and interpret the terms of the policy and to determine benefit eligibility thereunder. Exhibit 1 at 0020. Non-party Cerner Corporation is the plan administrator. Small affidavit, ¶ 5.

The administrative record reflects that the plaintiff received STD benefits for twelve weeks, beginning April 18, 2003. Exhibit 1 at 0357. Upon exhaustion of those benefits, the plaintiff used 56 hours of vacation time, then resigned effective July 25, 2003.[3] Exhibit 1 at 0357. After plaintiff requested LTD benefits, defendant determined she was eligible for total disability benefits only through August 4, 2003. Exhibit 1 at 326-330. Because the plaintiff was no longer employed in November 2003 when she had cataract surgery, she did not receive any LTD benefits based on

---

[3]Because the plaintiff was not able to return to work after twelve weeks, she and her employer agreed that she would resign. Exhibit 1 at 0075.

that surgery. Exhibit 1 at 0328. The plaintiff was informed of her right to appeal the determination under ERISA on December 3, 2003. Exhibit 1 at 0328-0329.

The plaintiff submitted a request for reconsideration on May 16, 2004. Exhibit 1 at 0265-0272. She argued that because cataracts are a known side effect of Kenalog injections, the cataract and surgery therefore are part of her disability. Exhibit 1 at 0266. She also stated that she had been unable to read for more than two to four hours a day due to pain. Exhibit 1 at 0266. As of the date of her request, the plaintiff was still having vision problems and still undergoing treatment for her right eye. Exhibit 1 at 0128-0135, 0266.

In a letter to plaintiff dated June 7, 2004, CNA[4] states that "[o]n June 10, 2004, we received a letter from you requesting an appeal of your claim." Exhibit 1 at 0263. It stated that after having reviewed all medical records, the prior decision would be upheld based on the rationale that plaintiff was released without restrictions on April 11, 2003. Exhibit 1 at 0263. Because plaintiff did not require treatment for her vision problems between April 11, 2003, and November 2003, and resigned on July 26, 2003, she was no longer an active employee eligible for coverage when her treatment resumed in November 2003. Exhibit 1 at 0263. Furthermore, because Dr.

---

[4]Administration of the claim was transferred from CNA to Hartford Life Insurance Company during the pendency of the appeal. *See e.g.*, Exhibit 1 at 0199.

Masear released the plaintiff to any activity she could tolerate following the July 2003 finger surgery, she had no ongoing disability from that injury. Exhibit 1 at 0263. The plaintiff was further notified that her file had been forwarded to the "Appeals Area." Exhibit 1 at 0263.

On June 8, 2004, the plaintiff had yet another surgery due to retinal detachment. Exhibit 1 at 0127, 0196. In July 2004 the plaintiff was informed she would need further surgery because her retina "buckled." Exhibit 1 at 0119-0122, 0193. Based on a review of the record, in October 2004 defendant Hartford reversed its decision in part, and found evidence to support the plaintiff's claim of entitlement to LTD benefits from March 3, 2003, through December 29, 2003, based on limitations from her hand. Exhibit 1 at 0087-0091, 0094. However, regarding the ongoing eye procedures, defendant Hartford found them to be noncompensable as the plaintiff's LTD benefits were no longer in force during the relevant time. Exhibit 1 at 0094.

Therefore, the issue before the court is whether the plaintiff's vision problems are a "continuous" disability, in which case plaintiff is entitled to LTD benefits, or whether the recurrent problems resolved and then reoccurred separately and after her last day of employment, in which case she is not entitled to LTD benefits.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that the plaintiff's ongoing vision problems did not arise prior to July 26,

2003, when plaintiff's employment ended, is correct. The Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecommunications, Inc,.* 373 F.3d 1132, 1138 (11th Cir.2004).

Applying the rules set forth in *Williams, supra*, the court must first determine whether the decision of the defendant was "wrong." Given the facts of this case, the court is unable to conclude that the administrator' decision was "*de novo* wrong."

In ERISA cases, "the plaintiff has the burden of proving her entitlement to contractual benefits." *Richards v. Hartford Life & Acc. Ins. Co.,* 2005 WL 2888214, *2 (11th Cir.2005), citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir.1998). Viewing all of the evidence before the court in the light most favorable to the plaintiff, the plaintiff's own treating physicians stated that there was no reason she could not go back to her own job. There is nothing in the administrative record from which defendants' decision could be found "unreasonable" or "wrong." Because the plaintiff was no longer employed at the point she required further treatment for her right eye, she had no ongoing entitlement to benefits when she began experiencing problems again. Her ophthalmologist stated that there was no reason she could not work between treatments.

After de novo review of the entire administrative record, the court is unable to conclude that the administrator's benefits-denial decision is wrong. Therefore, under the law as set forth by the Eleventh Circuit Court of Appeals, the court must end its inquiry and affirm the defendants' decision.

## CONCLUSION

Having considered the foregoing, the court is of the opinion that the defendants' motion for summary judgment is due to be granted as no genuine issues

of material fact remain for trial and the defendants are entitled to judgment in their favor as a matter of law.

It is therefore **ORDERED** by the court that the defendants' motion for summary judgment be and hereby is **GRANTED**.

**DONE** and **ORDERED** this the 21st day of <u>August</u>, 2006.

<u>                                                            </u>
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE